[Civ. No. 2690. Second Appellate District, Division One.—March 13, 1920.]

E. J. HENNING, as Trustee, etc., Respondent, v. REX B. CLARK, Appellant.

[1] PARTNERSHIP—FICTITIOUS NAME—TIME OF FILING AND PUBLISHING CERTIFICATE.—A partnership, the trade designation of which does not include the names of all the copartners, may satisfy the requirements of sections 2466 and 2468 of the Civil Code by making, filing, and publishing the certificate showing such names, even after suit brought and before answer; and the fact that the copartners had agreed upon a dissolution of the firm prior to the filing and publishing of the certificate does not create a different legal situation.

[2] ATTORNEY'S FEES — ACTION TO RECOVER — WHEN PAYABLE — EVIDENCE—FINDING.—In this action to recover compensation for legal services, there was substantial evidence to sustain the finding as made by the trial court that a certain sum was agreed upon between the plaintiff's assignors and defendant as being immediately

payable and not conditional upon the completion of certain un-finished business.

[3] ID.—COMPROMISE SETTLEMENT—FAILURE TO FURNISH BILL OF PAR-TICULARS.—In an action upon a compromise agreement, failure to furnish a bill of particulars upon demand will not preclude the plaintiff from introducing evidence in support of the allegations of his complaint.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. W. Kidd and Eugene D. Williams for Appellant.

L. S. Arnold and W. H. Wylie for Respondent.

JAMES, J.—Defendant has appealed from a judgment in favor of plaintiff for the principal sum of $650.

[1] It is alleged in the complaint of the plaintiff that Morganstern, McGee, Henning, Hendee, and Casebeer, prior to the first day of February, 1915, as attorneys and coun-selors at law, were engaged in the practice of their profes-sion as copartners in the city of San Diego; that appellant Clark had been a client of the copartnership and that on the date mentioned a large amount of money was due the firm from appellant as fees for services rendered; that on August 6, 1915, the members of the copartnership settled and ad-justed the accounts existing between the firm and appellant, and agreed that the indebtedness of Clark then was the sum of $650. It is further alleged that prior to the commence-ment of the action the individual members of the prior ex-isting copartnership assigned and transferred to Henning, one of the members, all their right, title, and interest to the claim against Clark. The further essential allegation is con-tained in the complaint that demand had been duly made upon Clark for payment of the money and such demand had been refused. The name under which the firm of attorneys had been practicing contained the name of each of the co-partners, except Casebeer. The complaint showed that fact, and further showed that prior to the commencement of the action a certificate, as required by section 2466 of the Civil Code, was duly executed, acknowledged, published, and filed in the office of the county clerk, showing the names of

all the partners composing the copartnership. While the truth of the latter allegation was admitted by the answer, we may call attention here to the fact that the evidence showed that such certificate was filed on May 13, 1915, and published for the requisite number of times, the last publication being June 10, 1915. As one of the points made by appellant is that this action could not be maintained because the certificate had not been filed and published during the time that the copartnership was engaged in business, that matter may be first disposed of. It has been held that a copartnership, the trade designation of which does not include the names of all the copartners, may satisfy the requirements of sections 2466 and 2468 of the Civil Code, by making, filing, and publishing the certificate showing such names, even after suit brought and before answer. (*Roullard* v. *Gray,* 38 Cal. App. 79, [175 Pac. 479].) The fact that the copartners had agreed upon a dissolution of the firm prior to the filing and publishing of the certificate referred to, we think, does not create a different legal situation than was considered in the case cited. To hold to the contrary would mean that under the facts none of the debts due to the copartnership could ever be collected by suit. Plainly the code provisions were not designed to work that result. We pass, then, to the other questions presented.

[2] It is contended in the main that the evidence was insufficient to sustain the finding as made by the trial court that the sum of $650 was agreed upon between the copartners and Clark as being immediately payable on August 6, 1915. In this regard the contention of appellant is that the evidence showed that his agreement to pay the $650 was contingent in that said amount was not to be paid until some alleged unfinished matters then in the hands of the law firm were concluded; and that the evidence showed there had never been performance of this obligation on the part of the law firm. This contention appears to us to be without merit. Appellant was called as a witness on behalf of the plaintiff and he testified that a meeting of this firm of lawyers of which he had been a client was held in his office in San Diego on August 6, 1915, and that the matter of his indebtedness to the firm, which was then being dissolved, was taken up; that he had been charged on the books of the firm with an indebtedness largely in excess of $650 and that after dis-

cussing and considering the various items of his account a
final figure of $650 was reached. In response to questions
by the court, he made the following replies: "Q. What was
that amount made up of—of the undisputed items? A. That
was all for undisputed—for items that were justly charged
to me. Q. For items that were justly charged to you and
for services they had rendered? A. Yes, sir. Q. I under-
stand you that a balance was struck there between you
for services, what you did actually owe them of $650?
A. Yes, sir. Q. For services? A. Approximately $650.
We agreed on $650 as an even amount." On cross-examina-
tion by his own counsel, the witness proceeded to qualify
his former positive statement by adding the condition that
his agreement to pay was contingent upon the performance
of further services by the members of the firm. Several
letters were introduced in evidence, as to the competency
of which we have no doubt. One letter, under date of De-
cember 23, 1916, was written by Mr. McGee, a member of
the former firm, to appellant, in which payment of the $650
was asked and in which the writer stated to the appellant
that "after a very lengthy discussion, in which you ques-
tioned certain items, we agreed positively and definitely to
accept $650. This you agreed to pay within a very short
time, saying that you did not then have the available cash."
No reply was made to this letter. On February 6, 1917, the
same writer again addressed a letter to appellant in an en-
deavor to secure payment of the money. This letter, among
other things, contained the following statement: "You know
as well as I do that you agreed to pay $650 on a bill that
was more than twice that amount. We have not desired to
bother you. . . . But you must be convinced that our only
desire was to settle the matter amicably, and that is the
reason we made the compromise in the first instance. And
that is the reason, also, that you promised to pay it on
several occasions." This letter was replied to by appellant
and in this reply for the first time, so far as the record of
the correspondence shows, the appellant raised the question
that there was the matter of the clearing of the title to some
property which the law firm should do before he was com-
pelled to pay. Mr. McGee answered this letter, denying
that there was any such qualification to the agreement on the
part of appellant to pay the money. The court was author-

ized to take the first statement of appellant, as given upon
his direct examination, as being true, which was in effect that
he had agreed to pay the $650 as a compromise amount on
the claim made against him by his attorneys, and that such
promise was without the qualification later sought to be
attached to it. On the direct examination the court's ques-
tion was specific and the answer positive, when it was
asked: "For items that were justly charged to you and for
services they *had* rendered?" the answer being, "Yes, sir."
The court, too, not without warrant, attached significance,
as is shown by the judge's statement made at the trial, to
the fact that, in response to the first letter written by Mr.
McGee to appellant after the compromise settlement had been
made, in which letter Mr. McGee demanded payment of the
$650, appellant made no reply whatsoever. That a person
from whom money was demanded in that manner and who
claimed that payment of the same rested upon conditions
unperformed should not immediately make denial of the
debt or call attention to the alleged contingencies affecting
the time of payment, was a circumstance to be given such
weight as the court might attach to it in determining the
facts in connection with appellant's testimony. The sole
question here is as to whether there was substantial evidence
to support the finding of the court which is attacked. There
was substantial evidence, we think, and the duty of resolv-
ing any conflict was one which rested solely with the trial
judge, with the decision of whom upon the facts we have
not the right to interfere.

[3] A demand for a bill of particulars had been made
prior to the trial and such bill not being furnished, objection
was made to the introduction of any testimony, appellant
insisting that such objection should have been sustained be-
cause of the provisions of section 454 of the Code of Civil
Procedure. That section, in part, provides as follows: "It
is not necessary for a party to set forth in a pleading the
items of an account therein alleged, but he must deliver to
the adverse party within five days after a demand thereof
in writing, a copy of the account, or be precluded from giv-
ing evidence thereof." Plaintiff here did not sue upon an
account, but upon a settlement agreement arrived at after a
consultation between the parties. Appellant by his own tes-
timony admitted the amount agreed upon; hence an examina-

tion of the items which were considered in compromising the claim could not have been properly gone into at the trial. An examination of those items was foreclosed by the very fact that the parties agreed upon a sum total after reviewing the account, excluding certain items and determining a balance. The case of *Auzerais* v. *Naglee*, 74 Cal. 60, [15 Pac. 371], is in point against the contention of appellant. The whole controversy as submitted to the court was not as to the correctness of any charges made prior to the compromise settlement, but only as to whether the $650, admittedly agreed to be paid by appellant, was payable on demand or after some further services had been performed. We think that the evidence fully supports the findings and judgment, and that no error appears entitling appellant to a reversal.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 12, 1920.